UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| GIOVANNI WILLIAMS,  )<br>  )<br>    Plaintiff  )<br>  )<br>vs.  )<br>  )<br>RUSTY YORK, *et al*,  )<br>  )<br>    Defendants  ) | CAUSE NO. 1:08-CV-152 RM |

## OPINION AND ORDER

Giovanni Williams, a *pro se* prisoner, was granted leave to proceed on claims against four members of the Fort Wayne Police Department for false arrest and excessive force. (DE 21.) The parties have filed cross-motions for summary judgment. (DE 85, 87.)

### FACTS[1]

On March 31, 2008, Detective Miranda Burch of the Fort Wayne Police Department domestic violence unit was assigned to a case involving Kimberly Dickey, who alleged that Mr. Williams, her live-in boyfriend, battered her on March 28, 2008. (DE 89, Burch Aff. ¶¶ 2-3.) Detective Burch contacted Ms. Dickey and interviewed her about what occurred. He also interviewed Ms. Dickey's two children, then ages seven and eleven. (*Id.* ¶ 4.)

Ms. Dickey told Detective Burch that Mr. Williams had been living with her since his release from prison, and that they had maintained a sexual relationship for the previous two months. (*Id.* ¶ 5.) In the weeks leading up to the incident, Ms. Dickey had told Mr.

---

[1] The facts stated in this opinion are undisputed unless otherwise stated.

Williams that she wanted him to move out. (*Id.*) On March 28, the two argued when Ms. Dickey told Mr. Williams to leave, and she called the police. (*Id.*) According to Ms. Dickey, Mr. Williams called her a "dirty white bitch" and punched her in the face with a closed fist, then pinned her against the wall and began strangling her. (*Id.*) She broke free by kicking him, but later blacked out and dropped to the floor. (*Id.*) Mr. Williams then dragged her into the bathroom and threw her in the bathtub. (*Id.*) Ms. Dickey's two children were present during the beating. (*Id.* ¶ 6.) Photographs taken of Ms. Dickey after the incident showed visible injuries. (*Id.* ¶ 10.)

On April 1, 2008, Detective Burch left a voice mail for Mr. Williams asking him to contact her. (*Id.* ¶ 8.) A few minutes later, Mr. Williams called back and said he was available to come to the police station for an interview. (DE 93-2, Williams Dep. at 15.) Detective Burch contacted Officers Darrell Caudill and Heather Hoffman for assistance. (DE 89, Burch Aff. ¶ 9.) When the officers arrived at the police department's investigative bureau, Detective Burch told them that Mr. Williams was coming in for an interview and that based on her investigation there was probable cause to arrest him for domestic battery and related offenses. (*Id.* ¶ 10; DE 91, Caudill Aff. ¶ 3; DE 92, Hoffman Aff. ¶ 3.)

When Mr. Williams arrived at the police station, Officer Caudill took him to an interview room on the third floor and placed a shackle around his ankle. (DE 91, Caudill Aff. ¶ 4; DE 93-2, Williams Dep. at 16.) Detective Burch arrived and began to explain the "Advice of Rights" form to Mr. Williams; he refused to sign the form and asked for an attorney. (DE 89, Burch Aff., Ex. A; DE 93-2, Williams Dep. at 25-26.) Detective Burch

terminated the interview and left the room. (DE 89, Burch Aff. ¶ 13.) Officer Caudill and Officer Hoffman entered the room a few minutes later and placed Mr. Williams under arrest. (*Id.*; DE 91, Caudill Aff. ¶ 6.) Officer Hoffman helped Officer Caudill handcuff Mr. Williams and inventory his personal belongings. (DE 93-2, Williams Dep. at 29.) The officers then unshackled Mr. Williams' ankle, escorted him to their squad car, and took him to jail. (*Id.* at 31.)

Mr. Williams was charged with strangulation, battery, interfering with the reporting of a crime, and being a habitual offender. State v. Williams, No. 02D04-0804-FD-000288. A jury found him guilty of strangulation, battery, and being a habitual offender. *Id.* He was sentenced to an aggregate term of seven years in prison. *Id.* The Indiana Court of Appeals affirmed Mr. Williams' conviction, Williams v. State, 924 N.E.2d 121 (Ind. Ct. App. 2009), and the Indiana Supreme Court denied his petition to transfer. Williams v. State, No. 02A03-0908-CR-363 (Ind. Sept. 20, 2010.)

## LEGAL STANDARDS

Summary judgment is appropriate when "the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986.) "Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment." Id.

To decide whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion "may not rely merely on allegations or denials in its own pleading," but rather must introduce affidavits or other evidence that "set forth specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is not appropriate if the court must "choose between competing inferences," Abdullahi v. City of Madison, 423 F.3d 763, 770 (7th Cir. 2005), nor can the court weigh the credibility of witnesses. Keri v. Bd. of Trust. of Purdue Univ., 458 F.3d 620, 627 (7th Cir. 2006.) When deciding cross-motions for summary judgment, the court must "constru[e] the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." Durable Manuf. Co. v. U.S. Dep't of Labor, 578 F.3d 497, 501 (7th Cir. 2009).

ANALYSIS

Before turning to the merits, the court must resolve the defendants' motion to strike. (DE 100, 101.) The defendants argue that Mr. Williams' affidavit submitted in response to their motion for summary judgment should be stricken in its entirety because it isn't based on personal knowledge. (DE 101 at 3.)

An affidavit used to support or oppose a motion for summary judgment "must be

made on personal knowledge, [must] set out facts that would be admissible in evidence, and [must] show that the affiant is competent to testify on the matters stated." FED. R. CIV. P. 56(e)(1). Several of the statements in Mr. Williams' affidavit don't meet this standard. For instance, he attests that "Defendant Burch instructed defendant Caudill to assault Plaintiff and to prevent Plaintiff from leaving the police station of his own free will." (DE 98, Williams Aff. ¶ 4.) Mr. Williams wasn't present during the conversation Detective Burch had with Officer Caudill before he got to the police station, and there is no apparent basis in the affidavit for him to have personal knowledge of this alleged statement. Several other assertions in the affidavit suffer from this same infirmity.

It also is improper for Mr. Williams to make legal conclusions in his affidavit. Payne v. Pauley, 337 F.3d 767, 772-773 (7th Cir. 2003). He does so in several instances, including asserting that "[i]ts undisputed" he was arrested without probable cause and that the defendants are "liable to Plaintiff on all above mentioned claims in said Section 1983 [action]." (DE 98, Williams Aff. ¶¶ 5, 18.) These are ultimate legal determinations to be made in this case, not factual matters within Mr. Williams' personal knowledge.

Still, the affidavit contains some statements that are within Mr. Williams' personal knowledge, such as that he wasn't searched when he first arrived at the police station and that he came to the station of his own free will. (*Id.* ¶¶ 2, 8, 13.) Even these statements are awkwardly worded since in some instances they are framed in terms of being "undisputed" facts rather than simply Mr. Williams' version of events. Despite their awkward wording, it is apparent that Mr. Williams meant these statements to reflect his

5

version of what occurred. The court declines to strike the affidavit in its entirety and will instead strike only the clearly objectionable paragraphs. Accordingly, the following paragraphs of Mr. Williams' affidavit are stricken, as they do not satisfy FED. R. CIV. P. 56(e)(1): Paragraphs 3, 4, 5, 6, 7, 11, 12, 14, 15, 16, 17, and 18.

The defendants also move to strike a newspaper article Mr. Williams has submitted. (DE 100 at 3-4.) The article relates to Mr. Williams' criminal case, specifically, his petition to transfer filed in the Indiana Supreme Court, in which he claimed that an in-court identification of him by Ms. Dickey's children was tainted by the fact that they were allowed to sit in the courtroom during their mother's testimony. (DE 98 at 30.) The defendants are correct that this newspaper article constitutes hearsay. FED. R. CIV. P. 801(c); Cody v. Harris, 409 F.3d 853, 860-61 (7th Cir. 2005) (a newspaper article is "clearly hearsay").

Mr. Williams argues that the article "does fall into Rule 803 and 804 hearsay exceptions", but he doesn't provide any analysis to support this assertion, and it isn't apparent how a newspaper article could meet any of the exceptions contained in those rules. *See* FED. R. CIV. P. 803-804. To the extent Mr. Williams means the article is not hearsay because he is not relying on it for its truth, this argument is incorrect. Mr. Williams points to the article as proof that, based on a statement by the reporter (which in turn appears to have been based on the argument of his appellate counsel), Ms. Dickey's children didn't "name him as the perpetrator" the night of the beating. (DE 98 at 30.) His argument assumes the truth of what the reporter says. Because this document and the statements

6

contained within it are hearsay, Mr. Williams can;t rely on it to oppose the defendants' motion for summary judgment. Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996) ("[A] party may not rely upon inadmissible hearsay . . . to oppose a motion for summary judgment.").

*A. False Arrest Claim*

The defendants first argue that Heck v. Humphrey, 512 U.S. 477 (1994), bars Mr. Williams' false arrest claim. Under Heck, a claim for monetary damages that necessarily implies the invalidity of a criminal conviction can't be brought unless and until the conviction is overturned or otherwise invalidated. Id. at 486-487. The defendants acknowledge, as they must, that Heck doesn't usually bar a Fourth Amendment false arrest claim, since the claim wouldn't necessarily imply the invalidity of a subsequent criminal conviction. *See* Evans v. Poskon, 603 F.3d 362, 363-364 (7th Cir. 2010); *see also* Wiley v. City of Chicago, 361 F.3d 994, 997 (7th Cir. 2004) ("[O]ne can have a successful wrongful arrest claim and still have a perfectly valid conviction.").

Nevertheless, the defendants argue that Mr. Williams is advancing a position that is incompatible with his conviction: that the defendants coerced Ms. Dickey's children into falsely implicating him. (DE 102 at 2.) Mr. Williams' *pro se* filings are confusing in places and so it is difficult to tell the exact basis of his false arrest claim. He does assert that the officers "tacitly coerced the kids with the help of their mother to change their story and say Plaintiff assaulted her."(DE 99 at 4.) To the extent Mr. Williams claims that the defendants

7

coerced the statements of Ms. Dickey's children, including the testimony they gave at trial, Heck v. Humphrey bars the claim. *See* Evans v. Poskon, 603 F.3d at 363.

It appears, however, that Mr. Williams may simply be taking issue with the information Detective Burch had at the time of his arrest. (DE 99 at 4, 7.) Whether Detective Burch had sufficient knowledge at the time of the arrest to establish probable cause isn't an issue that would implicate the validity of Mr. Williams' conviction. Moreover, Mr. Williams advances various other reasons why he believes his arrest was improper that don't implicate the validity of his conviction, including that the defendants didn't have a warrant for his arrest and didn't personally witness the beating. (*See* DE 85, 98, 99.) Because Heck v. Humphrey does not bar at least some aspects of Mr. Williams' false arrest claim, the court proceeds to the merits.

The existence of probable cause is an "absolute bar" to a Fourth Amendment false arrest claim. McBride v. Grice, 576 F.3d 703, 707 (7th Cir. 2009). The plaintiff bears the burden of proving the absence of probable cause. Id. at 706. Officers have probable cause if, based on the facts known to them at the time of the arrest, a prudent person would be justified in believing that the suspect has committed an offense. Smith v. Gomez, 550 F.3d 613, 618 (7th Cir. 2008). When officers have probable cause, they can arrest a suspect without a warrant. Id. In deciding to arrest someone for criminal conduct that the police officer didn't personally witness, the officer can rely on information provided to him by the victim or by an eyewitness the officer reasonably believes to be telling the truth. McBride v. Grice, 576 F.3d at 707; Holmes v. Village of Hoffman Estates, 511 F.3d 673, 680 (7th Cir.

8

2007). In deciding whether probable cause exists, officers are entitled to exercise common sense and to draw on their experience and training. United States v. Carrillo, 269 F.3d 761, 766 (7th Cir. 2001). "Probable cause is assessed objectively: a court looks at the conclusions that the arresting officer reasonably might have drawn from the information known to him rather than his subjective reasons for making the arrest." Holmes v. Hoffman Estates, 511 F.3d at 679.

Mr. Williams first argues that his arrest was improper because the officers didn't have an arrest warrant. (DE 85 at 1-2.) However, "it is well-established that when police have probable cause, they may effect an arrest without a supporting warrant."[2] Smith v. Gomez, 550 F.3d at 618. Furthermore, it is apparent from the record in this case that the defendants had probable cause to arrest Mr. Williams for domestic battery.

Under Indiana law, a person commits domestic battery if he "knowingly or intentionally touches" his spouse or someone with whom he is living as a spouse or has a child in common, "in a rude, insolent, or angry manner that results in bodily injury." IND. CODE § 35-42-2-1.3. Detective Burch spoke with the victim, Ms. Dickey, who told her that Mr. Williams had been living with her, that they had an ongoing sexual relationship, and that he had beaten and strangled her when she told him to move out. Ms. Dickey had visible physical injuries after the incident. This information provided more than ample

---

[2] A different rule applies where an officer enters a suspect's home to make an arrest; in such a case the officer needs either an arrest warrant, consent, or exigent circumstances. Payton v. New York, 445 U.S. 573 (1980); Steagald v. United States, 451 U.S. 204 (1981). This arrest wasn't made in Mr. Williams' home, so this rule doesn't apply.

basis for an arrest.

Mr. Williams argues that probable cause was lacking because Ms. Dickey's children didn't identify him as the perpetrator when Detective Burch interviewed them. (DE 99 at 3-4.) In support, he points to the newspaper article which, as already explained, can't be considered in deciding whether there is a genuine issue of material fact for trial. Mr. Williams doesn't dispute that Ms. Dickey identified him as the perpetrator, and even if her children didn't corroborate every aspect of her account, that wouldn't defeat probable cause. A finding of probable cause "does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." United States v. Carrillo, 269 F.3d at 766. Based on the facts known to police, they were justified in believing that Mr. Williams had committed domestic battery. Smith v. Gomez 550 F.3d at 618.

Even if Mr. Williams showed that probable cause for an arrest was lacking, the defendants would be entitled to qualified immunity as long as their belief that probable cause existed wasn't objectively unreasonable. Sornberger v. City of Knoxville, 434 F.3d 1006, 1014 (7th Cir. 2006). In other words, "[i]f the officers can establish that they had 'arguable probable cause' to arrest the plaintiff, then the officers are entitled to qualified immunity, even if a court later determines that they did not actually have probable cause." Carmichael v. Village of Palatine, Ill., 605 F.3d 451, 459 (7th Cir. 2010) (internal citation omitted). Summary judgment must be granted for the defendants if "a reasonable police officer in the same circumstances and with the same knowledge . . . could have reasonably

believed that probable cause existed in light of well-established law." *Id.* Based on Ms. Dickey's statement to police and her visible injuries, a reasonable police officer in Detective Burch's position easily could have concluded that probable cause existed to arrest Mr. Williams for domestic battery.

Mr. Williams also argues that Officer Caudill and Hoffman didn't have probable cause to arrest him because they didn't personally conduct the investigation or interview Ms. Dickey. (DE 85 at 1-3; DE 99 at 6-7.) Detective Burch conveyed the information from her investigation to the other officers, and they were entitled to rely on her probable cause determination in arresting Mr. Williams. Holmes v. Hoffman Estates, 511 F.3d at 680 (officer was allowed to rely on fellow officer's assessment that there was reason to believe plaintiff had broken the law and to arrest him on that basis). Mr. Williams' argument that probable cause was missing because none of the officers personally witnessed the assault fares no better. (*See* DE 85 at 1-2.) The officers were entitled to rely on the statements of the victim which, as already discussed, bore indicia of reliability. Holmes v. Hoffman Estates, 511 F.3d at 680. For these reasons, the defendants are entitled to summary judgment on the false arrest claim.

*B. Excessive Force Claim*

An officer's right to arrest a person includes the right to use some degree of physical force, but the Fourth Amendment requires that force to be objectively reasonable in light of the facts and circumstances of the particular situation. Graham v. Connor, 490 U.S. 386, 396 (1989). Factors to consider in deciding whether the amount of force used was

reasonable include the severity of the crime, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was resisting arrest or attempting to evade arrest by flight. Id.

Mr. Williams raised various allegations in his complaint about the use of excessive force, but the court granted him leave to proceed only on one claim: that the defendants used excessive force in shackling him to the chair in the interview room.[3] (DE 21 at 7-8.) The crux of Mr. Williams' claim is that the defendants maliciously put the shackles on tighter than they needed to be, causing him "extreme pain." (*Id.* at 8.)

In support of their summary judgment motion, the defendants submitted a video of Mr. Williams' interview at the police station that completely undercuts his claim that the defendants used excessive force against him. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

---

[3] The court previously decided that an alleged shove by Officer Caudill described by Mr. Williams in his complaint was *de minimis* and wouldn't support a Fourth Amendment claim. (DE 21 at 7.) A video submitted by the defendants shows that no such "shove" ever occurred. (DE 89, Burch Aff., Ex. A.) Mr. Williams asserts in his summary judgment filings that Officer Hoffman touched him on the arm without his permission while escorting him down the hall, thus committing a "battery" against him, and that she "kind of shoved" him into the squad car. (DE 85 at 3; DE 99 at 6-8; DE 93-2, Williams Dep. at 30.) No such claims were in Mr. Williams' complaint, and he wasn't given leave to proceed on any such claims. He can't amend his complaint through arguments raised in a response to a motion for summary judgment. Grayson v. O'Neill, 308 F.3d 808, 817 (7th Cir. 2002). Moreover, Officer Hoffman was permitted to use some degree of force to effectuate Mr. Williams' arrest, and the type of *de minimis* contact he describes wouldn't support a Fourth Amendment claim. Graham, 490 U.S. at 396.

The video depicts Officer Caudill calmly placing a shackle on Mr. Williams' ankle shortly after his arrival in the interview room. Mr. Williams watched Officer Caudill put the shackle on his ankle and said nothing. He didn't wince or otherwise act in manner that would suggest he was in pain as a result of the shackle. Officer Caudill then left the room, and Mr. Williams can be seen for several minutes sitting in the chair, casually gazing around the room, playing with his cell phone, and blowing bubbles with his gum. There is nothing to suggest he was in any type of distress or discomfort at all, let alone the type of "extreme pain" that he claims was caused by the shackle.

Officer Caudill came back in the room after a few minutes. He told Mr. Williams that Detective Burch was on her way, and said he was going to sit in on the interview because Detective Burch was pregnant and the department wanted another officer present during her interviews. Officer Caudill chuckled and the two engaged in a brief conversation. After that they sat in silence for a few more minutes. Officer Caudill left the room again and returned a few minutes later with Detective Burch, who introduced herself and began to go over an "Advice of Rights" form with Mr. Williams. After some discussion, Mr. Williams took the form and studied it closely, looking as though he was going to sign it. He then put it down and said he wanted to speak with a lawyer. Detective Burch responded, "okay," and walked out of the room. Mr. Williams proceeded to make two calls on his cell phone, including one to his mother. He talked with her calmly for several minutes, telling her that it looked as though he was going to be arrested.

Officer Hoffman and Officer Caudill then entered the room. Officer Caudill asked

13

Mr. Williams to stand up and told him he was under arrest. Mr. Williams stood quietly, still wearing the shackle, as the officers patted him down and placed the items in his pockets on the table one by one. Officer Caudill tried to engage Mr. Williams in conversation during this process, asking him whether he preferred to be called "Michael" or "Giovanni," as both names were on his record. Officer Hoffman then put Mr. Williams' personal belongings into a bag, and Officer Caudill removed the ankle shackle. Everyone walked out of the room, including Mr. Williams, who walked entirely on his own accord. At no time during these events did Mr. Williams appear to be in any type of physical distress, nor did he state to anyone, even his mother, that the shackle was too tight, that he was in pain, or that he needed medical attention. The video conclusively demonstrates that none of the three officers used anything approaching excessive force against Mr. Williams in the course of their interactions.

Mr. Williams asserts that the video shows him "wincing in pain and rubbing his ankle." (DE 99 at 5.) Although Mr. Williams appeared to readjust the shackle at one point so he could move his leg, the court's multiple viewings of the video show nothing approaching "wincing" or "rubbing" actions by Mr. Williams that would suggest he was in pain. He also claims that the video "clearly shows acts of editing to cover up Defendant Caudill's assault on plaintiff." (DE 99 at 7-8.) He cites nothing in support of this assertion, which appears to be based entirely on his own speculation. Mr. Williams can't defeat a motion for summary judgment with "speculation" or "innuendo." Gunville v. Walker, 583 F.3d 979, 986 (7th Cir. 2009). The defendants attest that the video hasn't been edited and

14

was created and maintained in the ordinary course of business. (DE 89, Burch Aff. ¶14.) The court has viewed the video on more than one occasion and nothing in it suggests that it was edited in any way. In light of the video, no reasonable jury could conclude that the defendants used excessive force against Mr. Williams. Scott v. Harris, 550 U.S. at 380-381 (when videotape "utterly discredited" the plaintiff's version of events, summary judgment should have been granted for police officer on excessive force claim). The defendants are entitled to summary judgment on the excessive force claim.

*C. Monell Claim*

Mr. Williams' remaining claim is that the City of Fort Wayne maintains unlawful policies regarding arrests and the use of force. *See* Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690-691 (1978). To establish municipal liability, Mr. Williams must first show that his constitutional rights were violated. Alexander v. City of South Bend, 433 F.3d 550, 557 (7th Cir. 2006) (municipal defendant could not be held liable on *Monell* claim unless its officers actually caused a constitutional violation). As already explained, Mr. Williams hasn't pointed to evidence sufficient to prove that any of the officers violated his Fourth Amendment rights. Accordingly, he cannot prevail on his municipal liability claim, and the defendants are entitled to summary judgment on this claim as well.

CONCLUSION

For these reasons, the court:

(1) GRANTS in part and DENIES in part the defendants' motion to strike (DE 100);

(2) DENIES the plaintiff's motion for summary judgment (DE 85);

(3) GRANTS the defendants' motion for summary judgment (DE 87); and

(4) DIRECTS the clerk to enter summary judgment in favor of the defendants.

SO ORDERED.

ENTERED: October  4 , 2010.

/s/ Robert L. Miller, Jr.<br>Judge<br>United States District Court

cc: G. Williams
    R. Keen, Jr./D. Bauer/K. Pautler